In the Matter of the Arbitration Between SAMUEL MENCHER, as President of Furriers Joint Council of New York, Appellant, and B. & S. ABELES & KAHN et al., Respondents.

First Department, December 20, 1948.

*Harold I. Cammer* of counsel (*Lee Pressman* and *Ralph Shapiro* with him on the brief; *Pressman, Witt & Cammer,* attorneys), for appellant.

*Jerome M. Hirsch* of counsel (*Milton Shalleck* with him on the brief; *Manfred H. Benedek* and *Hirsch Shalleck Krakower & Gelwan,* attorneys), for respondents.

COHN, J.   The Furriers Joint Council (hereinafter called "Union") is the labor union of the fur manufacturing workers in the city of New York.  Associated Fur Manufacturers, Inc. (hereinafter called "Associated"), is the employers' association in the same industry, representing 700 firms, or about one half of the fur manufacturers.

For some time the relationship between the Union and Associated has been governed by a collective labor agreement.  The present agreement contains provisions respecting minimum wages, maximum hours, terms and conditions of employment, as well as provisions that "there shall be no strike or lockout during the continuance of this agreement for any reason whatsoever" and "that there shall be no collective bargaining over and above the minimum scales."

In the month of June, 1948, Associated and its 700 members brought an action against the Union to recover $5,000,000 damages for alleged violation of the "no strike" provisions in the agreement.  The complaint of Associated charged that through concerted action of the Union, its shop chairmen and its officers, a demand was made in June, 1948, upon the employers for collective wage increases for all employee members of the Union above the minimum wage scale provided for in the collective labor agreement and that because of the refusal of some of the members of Associated to accede to the demand for collective

increases, the Union and its members through concerted action between June 7, 1948, and June 10, 1948, caused a strike of employees at fifty-two establishments of respondent members, all in violation of the terms of the collective labor agreement. It is also alleged in the complaint that the Union threatened other respondents with similar coercion and that in order to avoid complete loss of their business by reason of the persistence of the strikes and threats, these respondents acceded to the demands of the Union and agreed to grant collective increases of wages demanded. The Union made an application at Special Term to stay the action instituted by Associated and its members and to direct arbitration of the claims asserted against it by employer members of Associated upon the ground that the agreement between the Union and Associated called for arbitration of all disputes. From the order denying the motion, this appeal is taken.

Respondents contend that the Union may not compel arbitration between the Union and the individual respondents, members of Associated, because (1) there is no contract between the Union and respondents to arbitrate any alleged disputes; that any obligation to arbitrate was an undertaking of Associated and not of the individual employers and (2) '' there is nothing to arbitrate.''

We think that the language of the collective labor agreement makes adequate provision for arbitration. The agreement provides as follows:

'' XVI — Administration of the Agreement

'' 1. The parties to this agreement agree that there shall be no strike or lockout during the continuance of this agreement for any reason whatsoever, or because of any matter in controversy or dispute, between the Association and the Union or between any member of the Association and the Union, but that all matters in controversy or dispute, if any shall be immediately referred to the representatives of the respective organizations by the party or parties aggrieved, for immediate joint investigation and adjustment. In the event that the representatives of the parties hereto shall be unable to adjust the controversy or dispute, the same shall be immediately referred to the Conference Committee hereinafter provided. The controversy or dispute shall be adjusted within forty-eight (48) hours unless the time is extended by mutual consent.

'' 2. The parties to this agreement hereby establish a Conference Committee consisting of eleven (11) members, five (5) representing the Association and five (5) representing the Union,

and an additional individual selected by mutual consent between the parties hereto to act as Impartial Chairman for such term as may be agreed upon between the parties hereto and the party so selected. Such Impartial Chairman, as and when selected, shall preside at all meetings of the Conference Committee and shall have such powers as prescribed herein and shall have the power to vote in case of a tie.''

Though the agreement does not employ the word '' arbitrate,'' it does provide that '' all matters in controversy or dispute * * * shall be immediately referred to the representatives of the respective organizations * * * for immediate joint investigation and adjustment.'' The language sufficiently indicates an agreement to adjust, mediate and arbitrate. Use of the terms '' arbitration '' or '' arbitrate '' is not vital to the making of a valid agreement of arbitration provided that the court can ascertain from the agreement that it was the intention of the parties, as it clearly is here, that the controversy should be settled by mediation or arbitration. No particular form of words is necessary to the making of such a valid agreement. (*Matter of Hub Industries* [*George Mfg. Corp.*], 183 Misc. 767, mod. 269 App. Div. 177, affd. 294 N. Y. 897; see, also, *Green-Shrier Co.* v. *State Realty & M. Co.*, 199 N. Y. 65, 70.) As was said in *Wood* v. *Duff-Gordon* (222 N. Y. 88, 91): '' The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal. It takes a broader view today. A promise may be lacking, and yet the whole writing may be ' instinct with an obligation,' imperfectly expressed.''

Admittedly the procedure thus outlined was not resorted to by the parties. When in the months of May and June the disputes arose concerning demands for wage increases and when the strike occurred, representatives of the two groups in accordance with the method provided in the collective agreement should have met to adjust the matters and if they were unable to settle the controversies, the questions should have been referred to a conference committee consisting of eleven members, five representing the Associated and five the Union, to be presided over by the duly selected impartial chairman who was empowered to vote only in case of a tie.

In the past the parties seem to have treated the mediation provisions of the collective labor agreement as an arbitration contract with the impartial chairman as the sole arbiter of all disputes. Apparently respondents continued to act under this erroneous impression, for when the present controversies arose their appeal for a ruling was made exclusively to him. The

Union on the other hand requested a meeting of the conference committee to settle the issues, but no meeting of the committee was ever convened.

The impartial chairman, as is quite manifest from the various subsections of section XVI of the agreement, was without authority to act alone and apart from the conference committee. " The Conference Committee is the continuously functioning body dealing with the collective relations between the organized employers and the organized workers in the industry. * * * " (§ XVI, subd. 5.) The impartial chairman, it would seem, recognized the part he played in the machinery set up to govern the industry, for in a communication addressed to both sides he suggested that the matter go to arbitration. With commendable fairness, he expressed a willingness to be relieved of the responsibility of serving as impartial chairman and to have another designated in his place in the event that the employers would arbitrate.

Respondents' claim that any obligation to arbitrate was an undertaking of Associated and not of the individual members, we think, is equally without merit. The collective labor agreement was signed and executed by Associated in behalf of all of its members, which, of course, includes all respondents. The duty to arbitrate was assumed by Associated and by its members. The contract contains the following introductory paragraph:

" Whereas, the parties hereto have agreed to enter into a Collective Agreement, on behalf of their respective members, for the maintenance of harmonious and peaceful labor conditions in the manufacturing branch of the Fur Industry, both parties mutually pledging that they shall cooperate with each other in good faith in the enforcement of the terms of this agreement;"

Furthermore, section I of the contract provides that " The Union is hereby recognized as the sole representative of all employees for the purpose of collective bargaining with the Association on behalf of the members of the Association, respecting wages, hours and conditions of employment for the workers covered by the provisions of this Agreement." The collective labor agreement also contains the following pertinent provisions (§ XIV):

" 17. There shall be but one collective labor agreement in the fur manufacturing industry in Greater New York.

" 18. This agreement shall apply to and bind the parties hereto, their respective members and, if employer member is a corporation, the individual principals thereof."

The agreement to mediate and arbitrate is binding not only on Associated but as well on all the individual members of Associated. (*Matter of Devery [Daniels & Kennedy, Inc.*], 266 App. Div. 213, affd. 292 N. Y. 596; *Matter of Sun-Ray Cloak Co., Inc.*, 256 App. Div. 620, 623; *Association of Plumbing & Heating Contractors* v. *Merten*, 261 App. Div. 543, 545, affd. 288 N. Y. 555.) When Associated signed the collective labor agreement it did so as agent and representative of all members including respondents herein. It can hardly be argued that respondents may claim benefits under the collective labor agreement by suing for an alleged breach thereof and at the same time insist that they are not bound by the provision calling for mediation because each did not individually sign the contract. The agency of Associated which signed the collective labor agreement is unquestioned and clearly the employers are the primary parties.

We cannot concur in the view urged by respondents that there is nothing to arbitrate. The disputes outlined in respondents' complaint for which large damages are sought are all arbitrable. Whether Union or any of its members violated the contract would be a matter for the determination of the conference committee presided over by the impartial chairman. The respondent employers' claims for damages against the Union for allegedly instigating a strike or work stoppage, and against the workers for allegedly demanding and accepting improperly obtained increases by concerted action in violation of the terms of the agreement, appellant concedes, are also the subject of arbitration. What relief, if any the employers should have would be a matter for determination by the conference committee, which acting as the arbitral tribunal would possess broad equitable powers. (*Matter of Feuer Transportation Inc.* [Local No. 445], 295 N. Y. 87, 92.)

In a proceeding of this character two questions must be determined: (1) Was an agreement to arbitrate made and (2) has there been a refusal to arbitrate? Here, these two questions must be answered in the affirmative. The merits of the controversy will be determined not by the court but by the tribunal designated by the parties in the agreement to arbitrate. (*Matter of Lipman [Haeuser Shellac Co.*], 289 N. Y. 76, 80; *Matter of Behrens [Feuerring*], 296 N. Y. 172; *Matter of Kahn [National City Bank*], 284 N. Y. 515, 523.)

Associated, we think, should also participate in the arbitration proceeding. On June 10, 1948, by resolution it had discontinued its labor department and had declared that by reason of the fail-

ure of the Union to perform its obligations under the collective labor agreement it was " deprived of the impartial machinery provided for by the Collective Agreement for the arbitration of disputes arising under the Agreement ". It advised its members that it would " no longer handle any labor disputes or cases with the Union and that members must of necessity adjust such matters themselves." Such a stand is untenable. The detailed plan of industrial self-government in labor matters outlined in the collective labor agreement requires joint participation by the Union and Associated in the adjustment of all disputes between the parties and their respective members. The system, we are told, has successfully functioned for many years in effecting prompt solution of differences between the parties. We see no good reason why the present controversies should not be adjusted in accordance with this collective labor agreement.

In the order to be entered hereon there should be an appropriate provision to afford Associated an opportunity to take part in the arbitration proceeding. If it fails to participate within the required time, an application may be made to Special Term for the designation of substitute arbitrators.

The application staying the employers' action at law and directing them to submit the subject of the suit to adjustment and arbitration as provided for in the agreement should have been granted.

The order should be reversed and the application granted.

PECK, P. J., GLENNON, DORE and VAN VOORHIS, JJ., concur.

Order unanimously reversed, with $20 costs and disbursements to the appellant and the motion granted.