[Civ. No. 29300.   Second Dist., Div. One.   Feb. 17, 1966.]

SHELDON D. ROBERTS et al., Plaintiffs and Respondents, v. FORTUNE HOMES, INC., Defendant and Appellant.

Phillips & Powers and Douglas C. Phillips for Defendant and Appellant.

Donald B. Black and Betts & Loomis for Plaintiffs and Respondents.

LILLIE, J.—Defendant appeals from an order denying its "Petition to Order Arbitration," such order being expressly appealable under section 1294, subdivision (a), Code of Civil Procedure. The court also denied defendant's motion (filed simultaneously with the petition) to stay further proceedings (until arbitration had been had) in an action filed by plaintiffs some nine days earlier asking damages from defendant and others for fraud, negligent misrepresentation and the breach of certain building construction contracts. Each of such contracts, three in all, was entered into on December 17, 1963; each provided, in paragraph 18 thereof, that either party in the event of dispute could request arbitration by filing with the other a demand therefor in writing.

A reversal is sought on two grounds: First, plaintiffs' "response" to the petition was not served and filed within 10 days after its service upon them (Code Civ. Proc., § 1290.6), and hence the court exceeded its jurisdiction in rendering the adverse order; second, there was an insufficient showing by plaintiffs, as urged by them in their opposition to the petition, that defendant had waived its right to arbitrate.[1]

As to the first point, the subject petition was filed on November 6, 1964; the papers in opposition which erroneously make mention of service of the petition on November 4, were not served and filed until November 24—18 days later.[2] Hearing of the petition, originally noticed by defendant for November 17, was on that date continued to November 24 "by agreement of counsel." Section 1290.6 provides that the statutory period for service of the response "may be extended by an agreement in writing between the parties to the court proceeding or, for good cause, by order of the court." On the continued date, when the present point was orally presented, plaintiffs' counsel represented to the court that "This matter was continued by stipulation and there was contact by telephone back and forth between the offices and I didn't realize that Mr. Phillips was going to raise this objection." Defendant's

---

[1]The court not having disclosed the reasons for its order, the parties have assumed that it was based on the ground of defendant's waiver. (*Loscalzo* v. *Federal Mut. Ins. Co.*, 228 Cal.App.2d 391, 395 [39 Cal.Rptr. 437].)

[2]The record on appeal does not reveal the true date of service of plaintiffs' petition.

counsel remained mute, and the matter was then submitted for decision. Liberally construing the statute in light of all the above circumstances, we believe that the order continuing the hearing (pursuant to stipulation of counsel) also extended the period of service beyond that initially provided for. Defendant does not, and could not, claim prejudice since he failed to ask leave to file affidavits in opposition to those eventually served by plaintiffs; the taking of such affirmative action would not have been improper even though the allegations of a response "are deemed controverted or avoided." (Code Civ. Proc., § 1290.)

When a petition, such as the instant one, alleges the existence of a written agreement to arbitrate and the refusal of the other party to do so, "the court shall order the petitioner and the respondent to arbitrate the controversy . . . unless it determines that: (a) The right to compel arbitration has been waived by the petitioner; . . ." (Code Civ. Proc., § 1281.2.) Plaintiffs' claim of waiver is based upon defendant's alleged refusal to accept either of two demands by them to arbitrate. According to the declaration of Mr. Heywood, one of the plaintiffs-partners, he had several meetings with a representative of defendant in the months of March, April and May of 1964; at these meetings certain discrepancies in the construction job were discussed. Another meeting was had on June 2 or June 3 when Heywood pointed out to defendant's representative that "such irreparable matters as the foundations being placed in the wrong positions on the lots gravely affected the value of this property." Finally, on June 22 a demand (apparently an oral one) was made upon defendant's Mr. Schook to submit the matter to arbitration; this demand, according to Heywood, was rejected. Thereafter a second demand was made, this time by plaintiffs' counsel on July 1. Previously he had written defendant, calling attention to the discrepancies mentioned by Heywood. In his July 1 letter counsel specifies these several discrepancies and concludes with this statement: "We are confident that this conflict can be resolved; however, if performance of your contract is not completed by the close of business on July 15, 1964, we then demand that this be submitted to arbitration pursuant to Paragraph 18 of your contract."

The required form of the demand or request for arbitration is set forth in paragraph 18: ". . . In case of dispute either party hereto may make a request for arbitration by filing such a request in writing with the other. Said request

shall state the matters the party making the request considers to be in issue, and shall give the name and address of an arbitrator desired by the requesting party.'' Defendant argues that the first of plaintiffs' demands, not being in writing, did not comply with the controlling provision just quoted; hence, it was no demand at all. As for the second demand, it neither named an arbitrator or his address, nor did it set forth the issues as of July 15, the deadline date; for these reasons, it is urged, it likewise did not constitute a request for arbitration within the purview of paragraph 18. Therefore, concludes defendant, there could not have been any waiver of the right to arbitrate in the absence of any request therefor.

Plaintiffs nevertheless point out that the conduct of a party to an arbitration agreement may constitute a waiver of the right to arbitrate. ▪ Thus, ''One party to an arbitration agreement may, by dilatory tactics or express refusal to proceed, place himself in such a position that the other party may accede to the implied desire of the former, acquiesce in the abandonment of the arbitration and resort to court action.'' (*Grunwald-Marx, Inc.* v. *Los Angeles Joint Board, Amalgamated Clothing Workers,* 192 Cal.App.2d 268, 277 [13 Cal. Rptr. 446].) It is there also held that ''Whether there has been a waiver is usually a question for the trier of fact.'' (P. 277.) Decisions subsequent to *Grunwald-Marx*, however, have apparently crystallized the rule that it is an abuse of discretion not to stay proceedings and order arbitration unless the record before the superior court establishes waiver as a matter of law. (See *Zak* v. *State Farm etc. Ins. Co.*, 232 Cal. App.2d 500, 508 [42 Cal.Rptr. 908].) An example of such waiver is found in *Bertero* v. *Superior Court*, 216 Cal.App.2d 213 [30 Cal.Rptr. 719], where the entire contract in suit was clearly repudiated by one party in a letter to the other. '' 'Thereafter, the repudiator has no power of retraction and can not insist on the remedy by arbitration. . . .' [Citation.] '' (P. 219.) On the other hand, examples where the record fails to show waiver as a matter of law are found in *Loscalzo* v. *Federal Mut. Ins. Co., supra,* 228 Cal.App.2d 391, and *Tas-T-Nut Co.* v. *Continental Nut Co.,* 125 Cal.App.2d 351 [270 P.2d 43], in each of which cases it was held that the court erred in refusing to stay proceedings and direct arbitration. Both parties, interestingly enough, rely on these last two decisions, which we now discuss.

In *Tas-T-Nut*, the parties had exchanged letters from May

to December; suit was filed in February of the following year. Defendant answered and subsequently asked for an order compelling arbitration and for a stay. The court denied the petition, tried the issues presented by the pleadings and adopted findings to the effect that defendant had waived its right to arbitration. The court took note of the effect of "dilatory tactics," stating that "The utmost effect of conduct such as is displayed by the correspondence here would be to give to the respondent an election to either insist upon arbitration or, acceding to the implied desire of the appellant, acquiesce in the abandonment of arbitration and resort to court action. But this is an election which it must make for it cannot keep alive in itself the right to arbitrate and at the same time deny it to its adversary." (P. 355.) After quoting from a federal case, the court continued: "The above holding by the federal court is no more than an application of the familiar rule that if an agreement be breached the party against whom the breach is committed may refuse to accept the breach or terminate the contract, thus keeping the contract alive, but that if he does so he keeps it alive both for the benefit of himself and for that of the other contracting party. [Citations.] Here it is clear from the record that even if it be assumed the somewhat dilatory tactics of appellant would furnish ground for an inference that it had breached the arbitration clause, nevertheless at no time did respondent take the position that it was ending the contract for such breach and was abandoning its own rights to arbitrate. Had it, instead of following its threatened course, either agreed on the arbitrator proposed by appellant or had it, deeming appellant was still acting in bad faith and merely pretending willingness to arbitrate, applied to the court in which it later filed its action for an order compelling arbitration, it would have been successful in obtaining arbitration. Under such circumstances, having kept alive its own right to arbitrate, it could not prevent appellant from exercising the remedy of arbitration." (P. 356.)

The above rules are applicable here. There is nothing in the letter of plaintiffs' counsel, dated July 1, indicating their refusal to arbitrate. To the contrary, and again quoting therefrom, the communication expresses the writer's confidence that the "conflict of the parties can be resolved; however, if performance of your contract is not completed by the close of business on July 15, 1964, we then demand that this be submitted to arbitration pursuant to Paragraph 18 of your contract." Paraphrasing additional language in *Tas-T-Nut*

(p. 357), this was not an exercise of plaintiffs' election to treat defendant's dilatory tactics as a repudiation of the arbitration agreement nor a statement that plaintiffs were electing to accede to an abandonment of the arbitration clause.

In *Loscalzo,* the court recognized the right of a party to waive arbitration (citing *Tas-T-Nut*) and that the determination in such regard is ordinarily a question of fact (again citing *Tas-T-Nut*). ▇▇ The decision, however, points out that "waiver" is the "intentional relinquishment of a known right after knowledge of the facts." (P. 396.) It also points out that the sole evidence before the trial court on the subject of waiver was in the form of affidavits—that, as shown earlier, is the situation in our case, although, of course, the same rule applies which governs review of oral testimony. (*Griffith Co.* v. *San Diego College for Women,* 45 Cal.2d 501, 508 [289 P.2d 476, 47 A.L.R.2d 1349].)

▇▇ The declaration (or affidavit) of plaintiffs' counsel makes reference to his letter of July 1. It states that no reply, either oral or written, was received from defendant. It describes the communication as a demand for arbitration although, as noted earlier, compliance was not had with the provisions of paragraph 18 that plaintiffs name an arbitrator and furnish the address of the arbitrator thus named. As also noted earlier, counsel's letter in no way constitutes an abandonment of the arbitration clause; indeed, it is an invitation to proceed to arbitration "pursuant to Paragraph 18 of your contract." Under the circumstances, it may not properly be said that defendant intentionally relinquished "a known right after knowledge of the facts" under the accepted definition of "waiver" previously quoted; stated otherwise, it could not have waived any of its rights unless clearly put on notice of plaintiffs' intentions. The remaining declaration, that of Mr. Heywood, is no more helpful. It also makes reference to the July 1 letter of plaintiffs' counsel; and while it declares that defendant had never accepted plaintiffs' "demand for arbitration," the terms "waiver" and "relinquishment" (as in *Loscalzo*) are "notably absent" from the supporting document. Complaint is also made by Mr. Heywood that arbitration of the dispute could not possibly be carried out, at least with any degree of success, because defendant subsequently proposed its attorney as one of the arbitrators. This tactic is not necessarily a dilatory one and, we believe, quite beside the point.

For the foregoing reasons, the order must be reversed. It is now the settled policy of California to recognize and give the utmost effect to arbitration agreements. (*Grunwald-Marx, Inc.* v. *Los Angeles Joint Board, Amalgamated Clothing Workers, supra,* 192 Cal.App.2d 268, 276-277.)

The order is reversed.

Wood, P. J., and Fourt, J., concurred.