[L.A. No. 30526. Aug. 10, 1976.]

TERRY MADDEN, Plaintiff and Respondent, v.
KAISER FOUNDATION HOSPITALS et al.,
Defendants and Appellants.

■■■■■■■■

■■■■■■■■

**COUNSEL**

Thelen, Marrin, Johnson & Bridges, James W. Baldwin and Curtis A. Cole for Defendants and Appellants.

Harney, Bambic & Moore, Richard B. Wolfe and David M. Harney for Plaintiff and Respondent.

West & Girardi and Thomas V. Girardi as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**TOBRINER, J.**—Defendants appeal from an order denying enforcement of an arbitration provision in a medical services contract entered into between the Board of Administration of the State Employees Retirement System (hereafter board) and defendant Kaiser Foundation Health Plan.[1] Plaintiff, a state employee who enrolled under the Kaiser plan, contends that she is not bound by the provision for arbitration. The instant appeal presents the issue whether an agent or representative, contracting for medical services on behalf of a group of employees, has implied authority to agree to arbitration of malpractice claims of enrolled employees arising under the contract.

We shall explain that although the courts in the past regarded arbitration as an unusual and suspect procedure, they now recognize it as an accepted method of settlement of disputes. Since Civil Code section

[1]We shall refer collectively to all defendants who have appealed from the trial court order as "Kaiser." These defendants are Kaiser Foundation Health Plan, which contracted with the board to furnish medical services to state employees; the Kaiser Foundation Hospitals and Southern California Permanente Group, which contracted with Kaiser Foundation Health Plan to provide the hospital and medical services required by the contract with the board; and Angela Young, M.D., a surgeon associated with the Southern California Permanente Health Group.

Defendants California Transfusion Service and American Red Cross have not appealed from the trial court order.

2319 grants an agent the authority to do whatever is "proper and usual" to carry out his agency, the board enjoyed an implied authority to agree to arbitration of malpractice claims of enrolled employees.

We shall point out that although plaintiff relies upon principles pertaining to adhesion contracts to bar enforcement of the arbitration provision, such precepts only affect contractual provisions imposed by the stronger party upon the weaker which unfairly limit the duties or liability of the stronger. They do not apply to the arbitration provision in this case, a product of negotiations between parties possessing parity of bargaining strength, providing merely for a forum for enforcement of the rights of enrolled employees rather than a substantive limitation of them.

We shall reject, finally, plaintiff's contention that the arbitration provision violates constitutional and statutory provisions protecting the right to trial by jury. Persons entering into arbitration agreements know and intend that disputes arising under such agreements will be resolved by arbitration, not by juries; neither decision nor policy calls for an explicit waiver of the parties' right to jury trial or for express conformance with Code of Civil Procedure section 631, the applicable procedural statute.

Accordingly, we reverse the order of the trial court and direct that court to grant Kaiser's motion to compel arbitration.

1. *Summary of proceedings.*

In 1945 the Legislature enacted the State Employees' Retirement Act (Gov. Code, § 20000 et seq.) and delegated the administration of the act to a board selected pursuant to Government Code section 20100. Although this section has been amended frequently, it has at all times provided that at least one-third of the board members must be persons elected to that office by the public employees enrolled under the State Employees Retirement System.

In 1961, when California enacted the Meyers-Geddes Employee's Medical and Hospital Care Act (Gov. Code, § 22751 et seq.), the Legislature entrusted the administration of this new enactment to the existing retirement board. To make group medical plans available to state employees, the act authorized the board to enter into renewable one-year contracts with carriers offering basic health plans. (Gov. Code,

§§ 22774, 22790, 22793.) The act provides that state employees may enroll under any medical plan embodied in a contract negotiated between the board and the carriers (Gov. Code, § 22810); the state and the employees each contribute a portion of the cost of the plan. (Gov. Code, §§ 22825-22829.) The act requires that contracts must include a grievance procedure to protect the rights of the employees (Gov. Code, § 22793), but neither expressly grants nor withholds authority for the board to agree to arbitration of employees' malpractice claims.

Pursuant to the provisions of the act, the board negotiated an agreement with Kaiser Foundation Health Plan, a corporation, to provide medical, hospital, and related health care benefits to state employees and their families. The agreement states that it is "subject to amendment . . . by mutual agreement between [Kaiser] and . . . Board without the consent or concurrence of the Members. By electing medical and hospital coverage pursuant to this Agreement, or accepting benefits hereunder, all Members . . . agree to all terms, conditions and provisions hereof."

When plaintiff first enrolled under the Kaiser plan in 1965, it did not contain an arbitration provision. On April 1, 1971, however, the Kaiser Foundation Health Plan, anticipating the inclusion of an arbitration provision, mailed to all subscribers a brochure which, in describing the terms and benefits of the plan, stated that claims involving professional liability and personal injury must be submitted to arbitration. Shortly thereafter, on May 28, 1971, the Kaiser Foundation Health Plan and the board amended their contract in several respects and included a provision for binding arbitration of "any claim arising from the violation of a legal duty incident to this Agreement."[2]

On August 1, 1971, plaintiff underwent a hysterectomy at the Kaiser Hospital in Los Angeles. During the surgery, her bladder was perforated; blood transfusions were required; plaintiff thereafter contracted serum hepatitis.[3]

---

[2] The arbitration agreement stated that it was retroactive to April 1, 1971, the date of the Kaiser brochure advising subscribers of the arbitration clause. Since plaintiff's claim arose after May 28, 1971, we need not consider whether the agreement can be retroactively effective to require arbitration of claims arising before it was finally approved.

[3] Defendants California Transfusion Services and American Red Cross supplied the blood, which was stored at the Kaiser facility for use when necessary. These defendants do not claim to be covered by the arbitration provision in the Kaiser contract and are not parties to this appeal.

Plaintiff filed a malpractice complaint against Kaiser and the blood banks. Kaiser moved to stay the action and compel arbitration. Opposing this motion, plaintiff filed a declaration stating that because of absence from work by reason of illness she had not received the April 1971 brochure, that she was not aware of the execution of the arbitration agreement in May of 1971, and thus had no knowledge that the Kaiser plan, at the time of her operation, required arbitration of malpractice claims.

By order of April 22, 1974, the trial court denied the motion to stay the action and compel arbitration. Kaiser appeals from that order.[4]

2. *The board, as agent for the employees, had implied authority to provide for arbitration of malpractice claims.*

■ Government Code sections 22774, 22790 and 22793 authorize the board to negotiate contracts for group medical plans for state employees. In negotiating such agreements and amendments the board acts as the agent or representative of the employees. (*Blos* v. *Bankers Life Co.* (1955) 133 Cal.App.2d 147, 150 [283 P.2d 744]; see *Boseman* v. *Insurance Co.* (1937) 301 U.S. 196, 204-205 [81 L.Ed. 1036, 1040-1041, 57 S.Ct. 686, 110 A.L.R. 732]; *Elfstrom* v. *New York Life Ins. Co.* (1967) 67 Cal.2d 503, 512, fn. 5 [63 Cal.Rptr. 35, 432 P.2d 731].)[5] The acts of an agent within

---

[1]Kaiser also appealed from the trial court's order of May 22, 1974, denying a petition for reconsideration of the order denying the motion for stay and arbitration. Since the order denying the motion is clearly appealable (Code Civ. Proc., § 1294, subd. (a)), which appeal is sufficient to present Kaiser's contentions, the additional appeal from the order denying reconsideration serves no purpose in these proceedings. We therefore need not decide whether an order refusing to reconsider the denial of a motion to compel arbitration is an appealable order.

[5]*Blos* v. *Bankers Life Co., supra,* 133 Cal.App.2d 147, held that a trade association was the agent of its members in negotiating a group insurance policy. By analogy to that decision, we conclude that board in the present case was the agent of the employees in negotiating a group medical plan.

Our opinion in *Elfstrom* v. *New York Life Ins. Co., supra,* 67 Cal.2d 503, concerned the status of an employer in administering a group insurance policy. The opinion carefully distinguished between the negotiation of the group policy and the administration of that policy, and held only that in administering the policy the employer is the agent of the insurer. As we stated in *Elfstrom, Blos* v. *Bankers Life Co.* involved "a distinguishable factual situation" because in *Blos* "the question was not whether a grocer's association was the agent for the insurer in *administering* a group insurance policy but whether the association was the agent in *negotiating* the terms of the group policy." (67 Cal.2d 503, 512, fn. 5.) (Italics added.) We therefore view *Elfstrom* as recognizing the principle that in negotiating the terms of the policy, the employer serves as the agent of the employees.

Since the authority of the board derives from statute, not from the command of its principals, Kaiser suggests that the board is more properly termed a "representative"

the scope of his authority bind the principal (see Civ. Code, § 2330); application of this rule in the present context yields the conclusion that contract provisions, as well as amendments to the contract,[6] negotiated by the board within the scope of its authority as an agent, bind those employees who enroll under the contract.

■   This preliminary doctrinal recitation sets the stage for the principal issue of this appeal: whether the board, as agent of the employees, had implied authority to agree to a contract which provided for arbitration of all disputes, including malpractice claims, arising under that contract. That issue turns on the application of Civil Code section 2319, which authorizes a general agent "To do everything necessary or proper and usual . . . for effecting the purpose of his agency." For the reasons explained below, we conclude that arbitration is a "proper and usual" means of resolving malpractice disputes, and thus that an agent empowered to negotiate a group medical contract has the implied authority to agree to the inclusion of an arbitration provision.

In *Crofoot v. Blair Holdings Corp.* (1953) 119 Cal.App.2d 156, 183-184 [260 P.2d 156],[7] Justice Peters summarized the evolution of legal attitudes toward arbitration. "Arbitration has had a long and troubled history. The early common law courts did not favor arbitration, and greatly limited the powers of arbitrators. But in recent times a great change in attitude and policy has taken place. Arbitrations are now usually covered by statutory law, as they are in California. Such statutes evidence a strong public policy in favor of arbitrations, which policy has frequently been approved and enforced by the courts." Subsequent decisions confirm the self-evident fact that arbitration has become an accepted and favored method of resolving disputes (*Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1972) 24 Cal.App.3d 35, 43 [100 Cal.Rptr. 791]; *Federico v. Frick* (1970) 3 Cal.App.3d 872, 875 [84 Cal.Rptr. 74]; *Roberts v. Fortune Homes, Inc.* (1966) 240 Cal.App.2d 238, 244 [49 Cal.Rptr. 429]), praised by the courts as an expeditious and

instead of an "agent." An agent, however, is defined as "one who represents another" (Civ. Code, § 2295), and application of established principles of the law of agency suffice to resolve the present case without resort to the allegedly broader authority of a "representative."

[6]In *Gear v. Webster* (1968) 258 Cal.App.2d 57 [65 Cal.Rptr. 255], a real estate salesman joined a board of realtors and agreed to observe the board's bylaws. Two years later the bylaws were amended to provide for arbitration of any disputes between members of the board. The Court of Appeal held the salesman was bound by the amended bylaws and affirmed a trial court order compelling arbitration.

[7]Disapproved on other grounds in *Posner v. Grunwald-Marx, Inc.* (1961) 56 Cal.2d 169 [14 Cal.Rptr. 297, 363 P.2d 313].

economical method of relieving overburdened civil calendars (*Player* v. *Geo. M. Brewster & Son, Inc.* (1971) 18 Cal.App.3d 526, 534 [96 Cal.Rptr. 149]).

The transformation of legislative and judicial attitudes toward arbitration has encouraged a dramatic development in the use of this procedure. A 1952 study estimated that "aside from personal injury cases and cases in which the government is a party, more than 70 percent of the total civil litigation is decided through arbitration rather than by the courts" (Mentschikoff, *The Significance of Arbitration—A Preliminary Inquiry* (1952) 17 Law & Contemp. Prob. 698). In the following decades arbitration further expanded its role to encompass in certain circumstances disputes requiring evaluation of personal injury claims: California and many other states now require arbitration of uninsured motorist claims (see Ins. Code, § 11580.2), and proposals for no-fault automobile insurance frequently provide for arbitration (see Judicial Council of Cal., Study of the Role of Arbitration in the Judicial Process (1973) pp. 71-73).

Plaintiff nevertheless recites judicial authority holding that a provision for arbitration frames an extraordinary method of resolving disputes and that consequently the authority of an agent to agree to arbitration must be specially conferred. The only decisions which support that proposition, however, are cases from other states which date from an era of judicial hostility to arbitration. (*Pope* v. *Wheatley* (Tex.Civ.App. 1932) 54 S.W.2d 846; *Dunn* v. *Moore* (1938) 22 Tenn.App. 412 [123 S.W.2d 1095]; *Manufacturers' & Builders' Fire Ins. Co.* v. *Mullen* (1896) 48 Neb. 620 [67 N.W. 445].)[8] That judicial era has long since receded into a remote past. (See *Gear* v. *Webster, supra,* 258 Cal.App.2d 57, 61; Henderson, *Contractual Problems in the Enforcement of Agreements to Arbitrate Medical Malpractice* (1972) 58 Va.L.Rev. 947, 956.) The agent today who consents to arbitration follows a "proper and usual" practice "for effecting the purpose" of the agency; he merely agrees that disputes arising under the contract be resolved by a common, expeditious, and judicially favored method.

---

[8]The California decisions cited by plaintiff do not support her contention. In *Talmadge* v. *Arrowhead R. Co.* (1894) 101 Cal. 367 [35 P. 1000], the agent of a water company was authorized to buy land from Talmadge. When the agent and Talmadge could not agree on the price, they submitted that essential term of the agreement for determination by arbitration. In holding that the agent thereby exceeded his authority, the court ruled simply that an agent cannot without express authorization delegate to an arbitrator the power to fix the price at which his principal will purchase property; the court did not hold that an agent lacks authority to agree to a contract which includes a clause for arbitration of disputes arising under a formulated contract. *Tri-Cor, Inc.* v. *City of Hawthorne* (1970) 8 Cal.App.3d 134 [87 Cal.Rptr. 311], which held that a city attorney

The matter becomes even clearer if we narrow our focus to arbitration of disputes arising under group contracts. In collective bargaining agreements, which, like the present contract, are negotiated by elected representatives on behalf of a group of employees, arbitration has become a customary means of resolving disputes. (See, e.g., *Fire Fighters Union* v. *City of Vallejo* (1974) 12 Cal.3d 608, 622 [116 Cal.Rptr. 507, 526 P.2d 971]; *Charles J. Rounds Co.* v. *Joint Council of Teamsters No. 42* (1971) 4 Cal.3d 888 [95 Cal.Rptr. 53, 484 P.2d 1397]; *Posner* v. *Grunwald-Marx, Inc., supra,* 56 Cal.2d 169, 180.) Negotiators have invariably accepted without question the authority of the union representative to agree to such arbitration provisions. (See Code Civ. Proc., § 1280.) A New York decision confirms the equivalent right of a trade association representative to agree to an arbitration clause on behalf of the employers. (*Mencher* v. *B. & S. Abeles & Kahn* (1948) 274 App.Div. 585 [84 N.Y.S.2d 718, 733].) The viability of these thousands of agreements for arbitration should certainly not be sacrificed on the altar of an exotic and arid legalism that in all these years has not even occurred to the parties.

Finally, we observe the growing interest in and use of arbitration to cope with the increasing volume of medical malpractice claims. (See Judicial Council Study, *op. cit., supra,* pp. 70-71 and references there cited; Butler, *Arbitration: An Answer to the Medical Malpractice Crisis* (Sept.-Oct. 1975) 9 Beverly Hills Bar J. 41; Henderson, *op. cit., supra,* 58 Va.L.Rev. 947; Note, *Rx for New York's Medical Malpractice Crisis* (1975) 11 Colum.J.L. & Soc. Prob. 467, 500-503.)[9] The authority of an agent to agree to the arbitration of such claims finds an illustration in our decision in *Doyle* v. *Giuliucci* (1965) 62 Cal.2d 606 [43 Cal.Rptr. 697, 401 P.2d 1]. In *Doyle,* the father of an injured minor entered into a contract with the Ross-Loos Medical Group which provided for arbitration of tort and contract claims arising under the contract. In an unanimous opinion authored by Chief Justice Traynor, we held that the minor was bound by

lacked authority to submit a dispute concerning a city contract to arbitration, turned on the specific statutory powers and duties of the attorney. *Windsor Mills, Inc.* v. *Collins & Aikman Corp.* (1972) 25 Cal.App.3d 987 [101 Cal.Rptr. 347], does not involve the authority of an agent at all, but merely holds that a party could not be said to have agreed to an inconspicuous arbitration clause "of which he was unaware, contained in a document whose contractual nature was not obvious." (25 Cal.App.3d at p. 993.)

[9]In 1975 the Legislature enacted Code of Civil Procedure section 1295, which specifies the language which must be used in an arbitration provision inserted into an individual medical services contract. Although this enactment does not apply to the case at bar, it evidences legislative acknowledgment of arbitration as a means of resolving malpractice disputes.

the provision of the agreement to submit her malpractice claim to arbitration. "[T]he power to enter into a contract for medical care that binds the child to arbitrate any dispute arising thereunder," we stated, "is implicit in a parent's right and duty to provide for the care of his child." (P. 610.) Rejecting the contention that the arbitration clause unreasonably limited the minor's rights, we replied, "The arbitration provision in such contracts is a reasonable restriction, for it does no more than specify a forum for the settlement of disputes." (*Ibid.*)[10]

We do not believe *Doyle* can be distinguished from the instant case because it involves a parent contracting on behalf of a child instead of an agent contracting on behalf of its principal. Both parent and agent serve as fiduciaries with limited powers, and if, as *Doyle* holds, the implied authority of a parent includes the power to agree to arbitration of the child's malpractice claims, we perceive no reason why the implied authority of an agent should not similarly include the power to agree to arbitration of the principal's malpractice claims.

We therefore conclude that an agent or other fiduciary who contracts for medical treatment on behalf of his beneficiary retains the authority to enter into an agreement providing for arbitration of claims for medical malpractice.[11]

---

[10] Plaintiff seeks to distinguish *Doyle*. She points out that in *Doyle* the minor did not question the authority of her father to agree to arbitration until after the arbitrators had rendered an award. Plaintiff asserts that unlike the minor in *Doyle*, she presented her objection to arbitration at the earliest opportunity. In other words, plaintiff claims that the minor in *Doyle* failed to prevail *only* because she was dilatory in objecting to arbitration. But nothing in our opinion in *Doyle* suggests that our decision rested upon any theory that the minor had not raised her contention in a timely fashion; the opinion clearly holds that the fiduciary acted within his authority in entering into the initial arbitration agreement.

[11] Amicus suggests that we should fashion a new rule to the effect that no arbitration provision in a group insurance policy will bind the beneficiary absent proof of the beneficiary's *actual* knowledge of that provision. In the present case, Kaiser provided plaintiff with a brochure describing the Kaiser plan, including the arbitration provision. Apart from plaintiff's own testimony, neither the Board nor Kaiser have any way of proving whether or not plaintiff read all or part of that brochure. The orderly administration of the plan would be impossible if it were to depend on such proof. Amicus acknowledges as much; it does not maintain that no provision of the Kaiser plan can be enforced against a beneficiary who enrolls without actual knowledge of that provision; it would, instead provide only that arbitration provisions cannot be enforced without actual knowledge. But amicus' proposal for a special rule which discriminates against enforcement of arbitration clauses would be viable only if arbitration were an extraordinary procedure, and one especially disadvantageous for the beneficiary—propositions which we have rejected in *Doyle* and other cases cited in this opinion.

### 3. *The principles that govern contracts of adhesion do not bar enforcement of the arbitration amendment.*

██ Plaintiff asserts that she was unaware of the arbitration amendment and should not be bound by its terms. Although she must acknowledge the general rule that one who assents to a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument (see *Federico* v. *Frick, supra,* 3 Cal.App.3d 872, 875; 1 Witkin, Summary of Cal. Law (8th ed. 1973) p. 93 and cases there cited), she points to an exception to that rule in the instance of a contract of adhesion. ██ As we have frequently explained, courts will not enforce provisions in adhesion contracts which limit the duties or liability of the stronger party unless such provisions are "conspicuous, plain and clear" (*Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 878 [27 Cal.Rptr. 172, 377 P.2d 284]) and will not operate to defeat the reasonable expectations of the parties (see *Atlantic Nat. Ins. Co.* v. *Armstrong* (1966) 65 Cal.2d 100, 112 [52 Cal.Rptr. 569, 416 P.2d 801]).

██ Contending that the Kaiser contract is one of adhesion, plaintiff argues that the courts should refuse to enforce its arbitration clause on the ground that the clause is inconspicuous, unexpected, and disrupts the members' reasonable expectation that a malpractice claim will be adjudicated by trial by jury. We explain our reason for concluding that the principles governing adhesion contracts do not cover the present case.

The concept that a contract of adhesion should be interpreted and enforced differently from an ordinary contract has evolved from cases which have involved contractual provisions drafted and imposed by a party enjoying superior bargaining strength—provisions which unexpectedly and often unconscionably limit the obligations and liability of the party drafting the contract. (See *Neal* v. *State Farm Ins. Cos.* (1961) 188 Cal.App.2d 690 [10 Cal.Rptr. 781]; *Steven* v. *Fidelity & Casualty Co., supra,* 58 Cal.2d 862; *Tunkl* v. *Regents of University of California* (1963) 60 Cal.2d 92 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693]; *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168]; *Schmidt* v. *Pacific Mut. Life Ins. Co.* (1969) 268 Cal.App.2d 735 [74 Cal.Rptr. 367].) The present case resembles those precedents only in that the members were offered the Kaiser plan on a "take it or leave it" basis without opportunity for individual bargaining. The Kaiser contract, however, lacks those oppressive features which have characterized the contracts adjudicated in the prior decisions.

In the characteristic adhesion contract case, the stronger party drafts the contract, and the weaker has no opportunity, either personally or through an agent, to negotiate concerning its terms. (See *Steven v. Fidelity & Casualty Co., supra,* 58 Cal.2d 862, 882; Kessler, *Contracts of Adhesion—Some Thoughts About Freedom of Contract* (1943) 43 Colum.L.Rev. 629, 632.) The Kaiser plan, on the other hand, represents the product of negotiation between two parties, Kaiser and the board, possessing parity of bargaining strength. Although plaintiff did not engage in the personal negotiation of the contract's terms, she and other public employees benefitted from representation by a board, composed in part of persons elected by the affected employees, which exerted its bargaining strength to secure medical protection for employees on more favorable terms than any employee could individually obtain.

In many cases of adhesion contracts, the weaker party lacks not only the opportunity to bargain but also any realistic opportunity to look elsewhere for a more favorable contract; he must either adhere to the standardized agreement or forego the needed service. (See, e.g., *Tunkl* v. *Regents of University of California, supra,* 60 Cal.2d 92.) Plaintiff, on the other hand, enjoyed the opportunity to select from among several medical plans negotiated and offered by the board, some of which did not include arbitration provisions, or to contract individually for medical care.

Finally, in all prior contract of adhesion cases, the courts have concerned themselves with weighted contractual provisions which served to limit the obligations or liability of the stronger party. The arbitration amendment, by way of contrast, bears equally on Kaiser and the members. It does not detract from Kaiser's duty to use reasonable care in treating patients, nor limit its liability for breach of this duty, but merely substitutes one forum for another. (See *Doyle* v. *Giuliucci, supra,* 62 Cal.2d 606, 610.)

Although plaintiff asserts that the arbitration amendment promotes Kaiser's interest to the disadvantage of the members enrolled under the Kaiser plan, she overlooks the benefits of the arbitral forum. The speed and economy of arbitration, in contrast to the expense and delay of jury trial, could prove helpful to all parties; the simplified procedures and relaxed rules of evidence in arbitration may aid an injured plaintiff in presenting his case. Plaintiffs with less serious injuries, who cannot afford the high litigation expenses of court or jury trial, disproportionate to the

amount of their claim, will benefit especially from the simplicity and economy of arbitration; that procedure could facilitate the adjudication of minor malpractice claims which cannot economically be resolved in a judicial forum. Thus plaintiff's charge that the board surrendered the members' rights to jury trial without receiving an adequate quid pro quo must fail. Moreover, to the extent that arbitration reduces Kaiser's litigation expense, it may enable Kaiser to offer medical care to members at rates lower than otherwise would be the case.

To support her contract of adhesion argument, plaintiff points to *Tunkl* v. *Regents of University of California, supra,* 60 Cal.2d 92; that decision, however, serves instead to illuminate by contrast the nonoppressive character of the contract in the present case. In *Tunkl,* defendant hospital presented to all incoming patients a document entitled "Conditions of Admission," which provided that the patient *release* the hospital from liability for negligent or wrongful acts. We observed that the "would-be patient is in no position to reject the proffered agreement, to bargain with the hospital, or in lieu of agreement to find another hospital." (60 Cal.2d at p. 102.) Thus, the patient had no realistic choice but to assent to a standardized agreement under which he waived his right to recover for negligently inflicted injuries.

As we have explained, plaintiff, in contrast to *Tunkl,* benefitted from the board's assertion of equal power on her behalf, enjoyed the opportunity to choose from among alternative medical plans, and waived no substantive right. We conclude that *Tunkl* is not controlling in the instant setting; the principles of adhesion contracts, as elucidated and applied in *Tunkl* and the other cases we have cited, do not bar enforcement of terms of a negotiated contract which neither limit the liability of the stronger party nor bear oppressively upon the weaker. Accordingly, such principles do not bar enforcement of the arbitration amendment against plaintiff Madden.

4. *Enforcement of the arbitration provision does not violate constitutional or statutory protections of the right to trial by jury.*

Article I, section 16, of the California Constitution permits the waiver of a jury trial in a civil action "by the consent of the parties, expressed as prescribed by statute." As an implementation of this constitutional mandate, Code of Civil Procedure section 631 specifies several means by which a party can waive a jury trial: "written consent

filed with the clerk or judge," "oral consent, in open court, entered in the minutes or docket," failure to request a jury in timely fashion, failure to deposit jury fees, or failure to appear at trial. Plaintiff maintains that section 631 constitutes an exclusive listing of the means by which a party can waive his right to trial by jury in a civil action (see 4 Witkin, Cal. Procedure (2d ed. 1971) p. 2918 and cases there cited), and that the arbitration amendment is ineffective because it does not conform to the provisions of this section.

■ Section 631, however, presupposes a pending action, and relates only to the manner in which a party to such action can waive his right to demand a jury trial instead of a court trial. It does not purport to prevent parties from avoiding jury trial by not submitting their controversy to a court of law in the first instance. Indeed it has always been understood without question that parties could eschew jury trial either by settling the underlying controversy, or by agreeing to a method of resolving that controversy, such as arbitration, which does not invoke a judicial forum. Consequently when the Legislature enacted the specific language of the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) to govern the enforcement of arbitration agreements, it did not require that such agreements conform to section 631. Any requirement that the courts, contrary to legislative intent, engraft the terms of section 631 onto the Arbitration Act would be wholly impractical and onerous; we see no reason why the courts should become the repository of thousands of arbitration agreements, nor can we discern any policy to be served by striking down such agreements when not filed with a court or entered in its minutes.

■ Plaintiff further contends that the arbitration provision in the Kaiser contract fails because it does not expressly waive the parties' constitutional right to jury trial.[12] But to predicate the legality of a consensual arbitration agreement upon the parties' express waiver of jury trial would be as artificial as it would be disastrous.

---

[12]Plaintiff apparently intends to draw an analogy to the rule that the right to trial by jury in a criminal proceeding can be waived only by the express statement of the defendant himself. (See *In re Tahl* (1969) 1 Cal.3d 122, 131 [81 Cal.Rptr. 577, 460 P.2d 449].) This rule, however, has not been applied to the waiver of jury trial in civil proceedings; Code of Civil Procedure section 631, for example, permits implied waiver of jury trial by failure to request a jury or to post jury fees. The provisions of section 631 permitting such implied waiver have been upheld against the challenge that they deny the aggrieved party his right to trial by jury. (*Bennett* v. *Hillman* (1918) 37 Cal.App. 586, 588 [174 P. 362]; see *City of Los Angeles* v. *Zeller* (1917) 176 Cal. 194, 197 [167 P. 849].)

When parties agree to submit their disputes to arbitration they select a forum that is alternative to, and independent of, the judicial—a forum in which, as they well know, disputes are not resolved by juries. Hence there are literally thousands of commercial and labor contracts that provide for arbitration but do not contain express waivers of jury trial. Courts have regularly enforced such agreements; in *Charles J. Rounds Co. v. Joint Council of Teamsters No. 42, supra,* 4 Cal.3d 888, for example, we unanimously affirmed an order compelling an employer to submit a contract dispute to arbitration, although the arbitration provision did not expressly waive the employer's right to trial by jury. Relying on this consistent pattern of judicial decision, contracting parties, such as Kaiser and the board in the case at bar, continue to draft arbitration provisions without express mention of any right to jury trial. Before today no one has so much as imagined that such agreements are consequently invalid; to destroy their viability upon an extreme hypothesis that they fail expressly to negative jury trials would be to frustrate the parties' interests and destroy the sanctity of their mutual promises.

5.  *Plaintiff cannot avoid arbitration with Kaiser by joining other parties as defendants in her malpractice suit.*

▮ Plaintiff contends that a stay of her action with respect to Kaiser will lead to piecemeal and protracted litigation because she has also named as defendants the two blood banks. We agree that plaintiff may properly join the blood banks as parties defendant (*Landau v. Salam* (1971) 4 Cal.3d 901 [95 Cal.Rptr. 46, 484 P.2d 1390]), but that right does not empower her to avoid her duty to arbitrate any dispute with Kaiser. We point out that under these circumstances, the trial court is not required to stay all proceedings against the defendants who are not entitled to arbitration; the court may, in its discretion, sever the action as to the blood banks or limit any stay to those issues subject to arbitration. (See Code Civ. Proc., § 1281.4; *Cook v. Superior Court* (1966) 240 Cal.App.2d 880, 885 [50 Cal.Rptr. 81].)

6.  *Conclusion.*

Under the aegis of permissive legislation and favorable judicial decisions, arbitration has become a proper and usual means of resolving civil disputes, including disputes relating to medical malpractice. We should not now turn the judicial clock backwards to an era of hostility toward arbitration. We should not fetter that institution with artificial

requirements that a contracting agent must secure express authorization to enter into an arbitration provision or that the provision itself must explicitly waive rights to jury trial. We should not impose debilitating obstructions, such as those urged by plaintiffs, which could very well jeopardize the legality of the huge number of presently functioning and efficacious arbitration agreements.

We conclude that the trial court erred in denying Kaiser's motion to compel arbitration and in refusing to stay the action against Kaiser. The trial court's refusal to stay the action as to the blood bank defendants is not challenged on appeal, but the trial court may wish to reconsider its order with respect to those defendants in light of our disposition of Kaiser's appeal.

The order of April 22, 1974, denying Kaiser's motion to stay further proceedings and compel arbitration is reversed, and the cause remanded for further proceedings consistent with the views expressed herein. The appeal from the order of May 22, 1974, denying Kaiser's petition for reconsideration, is dismissed.

Wright, C. J., McComb, J., Sullivan, J., Clark, J., and Files, J.,* concurred.

**MOSK, J.**—I dissent.

The issue is relatively uncomplicated: may a party litigant who has neither agreed to arbitrate her claim, nor authorized anyone to agree for her, be compelled to arbitrate because of defendant's unilateral demand for arbitration? The trial court properly responded in the negative.

The trial judge, with commendable candor, recited factual findings in connection with his order: (1) "the contract is of adhesion"; (2) "there is no showing that there was notice to the parties specifically involved in this claim . . . [There was a] lack of specific notice to the participant in the hospital plan."

The policy declarations of the majority opinion in favor of arbitration, its criticism of "hostility to arbitration," concern over "artificial require-ments" fettering a valuable institution, and opposition to imposing "debilitating obstructions"—and other inordinately lyrical pronounce-ments of undeniable principles—obscure the majority's tendency to

*Assigned by the Chairman of the Judicial Council.

overlook the factual circumstances involving this plaintiff and the context of this case. I shall attempt to cure that oversight.

A point at which to begin, in view of the trial court's factual finding, is the plaintiff's declaration under penalty of perjury in connection with defendant's motion to compel arbitration. Her declaration reads in *haec verba:*

"That I am the Plaintiff in the lawsuit entitled *Madden vs. Kaiser Foundation Hospitals,* et al., and presently reside in Los Angeles County. That I became a member of the California State Employees Association in, on or about July, 1956, and thereafter, by and through said organization, became covered by the Kaiser Foundation Health Plan, said coverage becoming effective on or about May 1, 1965. That at the time coverage with Kaiser commenced, I had no notice or knowledge whatsoever of any then-existing arbitration plan, nor was I given any notice nor did I have any knowledge that the plan would later be amended so as to compel arbitration of any claims against the hospital or the doctors who worked in the Kaiser Hospital, including the Southern California Permanente Medical Group. Furthermore, I have never received any notice nor did I gain any knowledge whatsoever that the plan which provided medical care by Kaiser, had been amended so as to compel arbitration of any claims against the hospital or the doctors who worked in the Kaiser Hospital, including the Southern California Permanente Medical Group. At no time prior to and including, May 28, 1971, did I receive any written or oral notification of any arbitration clause, nor did I receive any notification, oral or written, that I would participate in a deposit of $150.00 to initiate arbitration proceedings. At no time, have I ever entered into any bargaining agreement, or entered into any negotiations with anyone to contract away my basic civil right to a jury trial for claims arising out of malpractice committed against myself. Had I been aware of any arbitration clause, or had I been given notice about any arbitration clause, either at the time I became covered by Kaiser or any time thereafter, I would never have committed myself to the care of these Defendants, nor would I have waived my right to a jury trial and simply agreed to arbitrate claims arising out of malpractice committed against myself."

The trial court, as the ultimate authority on contested facts, believed the plaintiff and ruled in her favor on defendant's motion. As a reviewing court, we must accept the foregoing declaration and all the assertions therein as true. Thus our task is simply to determine whether

there is any law compelling arbitration by a litigant who has not agreed to arbitrate. The majority have cited no statute that requires such a draconian result; indeed, if there were a law that could be so interpreted its constitutionality would be suspect.

It must be emphasized that the plaintiff enrolled in the Kaiser plan in 1965, at a time when the master contract between Kaiser and the Board of Administrators of the State Employees Retirement System contained no arbitration clause and apparently none was contemplated. Thus plaintiff's enrollment in the plan was in no way conditioned upon a waiver of her right to sue for medical malpractice if it were to occur in the future, or upon an agreement to submit all future claims to arbitration.

Six years after plaintiff's original enrollment in the plan, without her knowledge or consent, the board purporting to act on her behalf agreed with Kaiser to amend the master contract to provide that plaintiff's claims must be submitted to arbitration. The board was given no specific authority to compel arbitration under the Meyers-Geddes Act, so the majority concede, but asserts it could do so under Civil Code section 2319 which grants an agent the right to do whatever is "proper and usual." Note the use of the conjunctive. In addition the code section requires that the agent act "in the ordinary course of business."

Contrary to the unsupportable assumption of the majority, arbitration may be a "proper" scheme for settling malpractice disputes but it is not the "usual" or "ordinary" method. The normal, usual, ordinary, most frequently employed, commonly accepted means of resolving malpractice controversies is litigation in a court of law, with its due process protections and constitutional guarantee of a trial by jury. Despite all the laudatory and affectionate expressions of the majority directed to the institution of arbitration—which I share in many respects—it still has not replaced the judicial system as the primary source of dispute resolution. (See, e.g., Mosk, *Arbitration Versus Litigation* (1953) 58 Com.L.J. 63; Mosk, *The Lawyer and Commercial Arbitration* (1953) 39 A.B.A.J. 193, 258.)

It is clear that a party can be compelled to submit a dispute to arbitration only if he has contracted in writing to do so (Code Civ. Proc., §§ 1281, 1281.2; *Berman v. Renart Sportswear Corp.* (1963) 222 Cal.App.2d 385, 388 [35 Cal.Rptr. 218].) Had the original master contract

executed by the board and Kaiser provided for arbitration, plaintiff might have been bound thereby when she signed a written enrollment in the program. (Cf. *Tunkl* v. *Regents of University of California* (1963) 60 Cal.2d 92 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693].) But six years after enrollment by plaintiff an amendment providing for abdication of fundamental rights can be effective only if plaintiff consents thereto in writing. This is manifest when the two rights purportedly abandoned by the board on behalf of plaintiff are as fundamental as recourse to the courts of the state and trial by jury.

The right to a jury trial is guaranteed by article I, section 7, of the California Constitution. It may not be denied a party by act of the Legislature, or by agreement of an agent acting without specific authority (*Linsk* v. *Linsk* (1969) 70 Cal.2d 272 [74 Cal.Rptr. 544, 449 P.2d 760]). A jury trial may be waived only in accordance with provisions of Code of Civil Procedure section 631.

In view of the foregoing controlling rules, I need not reach the plaintiff's contention that the amendment was a contract of adhesion, other than to note that there is support for that position in *Tunkl* v. *Regents of University of California, supra,* 60 Cal.2d 92.

Cases cited by the majority are not contrary to the foregoing principles. In *Doyle* v. *Guiliucci* (1965) 62 Cal.2d 606 [43 Cal.Rptr. 697, 401 P.2d 1], the "crucial question" was whether a father's right to enter into an arbitration agreement on behalf of a minor "is implicit in a parent's right and duty to provide for the care of his child." (*Id.,* at p. 610.) In *Doyle* the plaintiff father, later designated as guardian ad litem, initiated the arbitration proceedings. That factual context is inapposite to this situation in which the defendant unilaterally seeks to compel arbitration by a reluctant adult plaintiff.

I would affirm the order of the trial court.