**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MATTHEW C. KILGORE, individually
and on behalf of all others
similarly situated; WILLIAM BRUCE
FULLER, individually and on behalf
of all others similarly situated,
           *Plaintiffs-Appellees,*

v.

KEYBANK, NATIONAL ASSOCIATION,
successor in interest to KeyBank
USA, N.A.; KEY EDUCATION
RESOURCES, a division of KeyBank
National Association; GREAT
LAKES EDUCATION LOAN SERVICES,
INC., a Wisconsin corporation,
           *Defendants-Appellants,*

No. 09-16703

D.C. No.
3:08-cv-02958-THE

MATTHEW C. KILGORE, individually
and on behalf of all others
similarly situated; WILLIAM BRUCE
FULLER, individually and on behalf
of all others similarly situated,
                 *Plaintiffs-Appellants,*

                 v.

KEYBANK, NATIONAL ASSOCIATION,
successor in interest to KeyBank
USA, N.A.; KEY EDUCATION
RESOURCES, a division of KeyBank
National Association; GREAT
LAKES EDUCATION LOAN SERVICES,
INC., a Wisconsin corporation,
                 *Defendants-Appellees.*

No. 10-15934
D.C. No.
3:08-cv-02958-THE
OPINION

Appeal from the United States District Court
for the Northern District of California
Thelton E. Henderson, Senior District Judge, Presiding

Argued and Submitted
December 5, 2011—San Francisco, California

Filed March 7, 2012

Before: Stephen S. Trott and Carlos T. Bea, Circuit Judges,
and Rebecca R. Pallmeyer, District Judge.*

Opinion by Judge Trott

---

*The Honorable Rebecca R. Pallmeyer, District Judge for the U.S. District Court for Northern Illinois, sitting by designation.

## COUNSEL

Andrew A. August, Pinnacle Law Group, LLP, San Francisco, California, for the plaintiffs-appellees/appellants.

W. Scott O'Connell, Nixon Peabody LLP, Manchester, New Hampshire, for the defendants-appellants/appellees.

Mark A. Chavez, Chavez & Gertler LLP, Mill Valley, California, for amici National Consumer Law Center, National Association of Consumer Advocates, and National Consumers League.

Gregory F. Taylor, American Bankers Association, Washington, D.C., for the amici American Bankers Association, Consumer Bankers Association, and the Clearing House Association, L.L.C.

**OPINION**

TROTT, Circuit Judge:

These consolidated appeals involve the sometimes delicate and precarious dance between state law and federal law. Matthew Kilgore and William Fuller ("Plaintiffs") brought this putative class action against KeyBank, N.A., Key Education Resources, and loan servicer Great Lakes Education Loan Services, Inc. (collectively, "KeyBank"), alleging violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, in connection with private student loans that KeyBank extended to Plaintiffs. Each of Plaintiffs' loan contracts contained an arbitration clause, which the district court declined to enforce. In Interlocutory Appeal No. 09-17603, we consider whether, in light of the Supreme Court's recent decision in *AT&T Mobility, Inc. v. Concepcion*, ___ U.S. ___, 131 S. Ct. 1740 (2011), the Federal Arbitration Act ("FAA" or "Act") preempts California's state law rule prohibiting the arbitration of claims for broad, public injunctive relief — a rule established in *Broughton v. Cigna Healthplans of California*, 988 P.2d 67 (Cal. 1999), and *Cruz v. Pacificare Health Systems, Inc.*, 66 P.3d 1157 (Cal. 2003). We consider also whether the arbitration clause is unconscionable. We have jurisdiction pursuant to 9 U.S.C. § 16(a)(1)(C).

We conclude that (1) the FAA preempts the *Broughton-Cruz* rule and (2) the arbitration clause in the parties' contracts must be enforced because it is not unconscionable. Therefore, we do not reach the question, presented in Appeal No. 10-15934, whether the National Bank Act ("NBA") and the regulations of the Office of the Comptroller of the Currency ("OCC") preempt Plaintiff's UCL claims. Accordingly, in Interlocutory Appeal No. 09-16703, we reverse the district court's denial of KeyBank's motion to compel arbitration, vacate the judgment, and remand to the district court with instructions to enter an order staying the case and compelling

arbitration. Because the disposition of that appeal renders the district court's subsequent dismissal order a nullity, we dismiss Appeal No. 10-15934 as moot.

# I

## BACKGROUND

Plaintiffs are former students of a private helicopter vocational school located in Oakland, California, and operated by Silver State Helicopters, LLC ("SSH"). According to Plaintiffs, SSH engaged in an elaborate, aggressive, and misleading marketing effort to attract students. Plaintiffs claim SSH was a "sham aviation school" that targeted limited-income individuals who could not afford to pay for their pilot training without taking out student loans. SSH's "preferred lender" was KeyBank, and SSH gave prospective students loan application forms and other information about borrowing tuition money from KeyBank.

To fund their helicopter training, Plaintiffs and each member of the putative class borrowed between $50,000 and $60,000 from KeyBank. Each Plaintiff signed a promissory note ("Note"), promising to repay KeyBank for the student loan. The transaction was structured so that KeyBank disbursed the entire loan proceeds to SSH before the student completed his training.

Each Note contained an arbitration clause, included in a separate section entitled "**ARBITRATION**." The arbitration clause informed Plaintiffs that they could opt out of the clause and that if they did not, Plaintiffs would be giving up their rights (1) to litigate any claim in court and (2) to proceed with any claim on a class basis:

> **IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, NEITHER YOU NOR I WILL HAVE THE RIGHT**

***TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL* ON THAT CLAIM . . . . FURTHER, I WILL NOT HAVE THE RIGHT TO PARTICIPATE *AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS* . . . . I UNDERSTAND THAT OTHER RIGHTS THAT I WOULD HAVE IF I WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION. THE FEES CHARGED BY THE ARBITRATION ADMINISTRATOR MAY BE GREATER THAN THE FEES CHARGED BY A COURT.***

*There shall be no authority for any Claims to be arbitrated on a class action basis.* Furthermore, an arbitration can only decide your or my Claim(s) and may not consolidate or join the claims of other persons that may have similar claims.

(boldface in original) (additional emphasis added). The arbitration clause included an opt-out provision: "**This Arbitration Provision will apply to my Note . . . unless I *notify you in writing* that I reject the Arbitration Provisions *within 60 days* of signing my Note.**" (emphasis added) (boldface in original).

In addition, each Note included a choice of law clause:

**THE PROVISIONS OF THIS NOTE WILL BE GOVERNED BY FEDERAL LAWS AND THE LAWS OF THE STATE OF OHIO, WITHOUT REGARD TO CONFLICT OF LAW RULES.**

The Note also contained a forum-selection clause designating, as the appropriate forum for the resolution of all disputes arising from the Notes, the county in which KeyBank has its principal place of business: Cuyahoga County, Ohio. KeyBank,

however, does not argue on appeal that the forum-selection clause should have been enforced.

Plaintiffs signed the Notes immediately below several conspicuous statements contained in a box set off from the rest of the document. One of these statements provided,

> **I UNDERSTAND THAT THE MASTER STUDENT LOAN PROMISSORY NOTE GOVERNING MY LOAN CONTAINS AN ARBITRATION PROVISION UNDER WHICH CERTAIN DISPUTES (AS DESCRIBED IN THE ARBITRATION PROVISION) BETWEEN ME AND YOU AND/OR CERTAIN OTHER PARTIES WILL BE RESOLVED BY BINDING ARBITRATION, IF ELECTED BY ME OR YOU OR CERTAIN OTHER PARTIES. IF A DISPUTE IS ARBITRATED, THE PARTIES *WILL NOT HAVE THE OPPORTUNITY TO HAVE A JUDGE OR JURY RESOLVE IT AND OTHER RIGHTS MAY BE SUBSTANTIALLY LIMITED.***

(boldface in original) (additional emphasis added). Another statement was a warning: **"CAUTION: IT IS IMPORTANT THAT I THOROUGHLY READ THE CONTRACT BEFORE I SIGN IT."** A third statement in the box was a promise by the student: **"I WILL NOT SIGN THIS AGREEMENT/NOTE BEFORE I READ IT (EVEN IF OTHERWISE ADVISED)."**

Each Plaintiff also signed a Service Contract Agreement with SSH. In this Agreement, SSH described its vocational training services as including 175 flight hours, unlimited access to a flight simulator, ground school classes, and individual instruction "as needed." Included in the cost of training were textbooks, supplies, and other required materials. Plaintiffs claim that although the Agreement required all training

to be completed within 18 months, SSH's lack of resources made it impossible to finish within that time.

SSH executives allegedly misappropriated the student loan funds it received from KeyBank "for their own personal benefit" and "knew [SSH] did not have and never would have sufficient equipment, trainers or maintenance personnel to meet its obligations under the Service Contract Agreements" within the required time period. Although Plaintiffs Kilgore and Fuller logged 185.8 and 310 hours of flight training respectively — more than the promised 175 hours — they did not complete all requirements for graduation before SSH closed its doors and filed for bankruptcy in February of 2008. They therefore did not receive a diploma, certificate or other accreditation for their training.

According to Plaintiffs, KeyBank had knowledge that "the private student loan industry — and particularly aviation schools — was a slowly unfolding disaster," yet continued to loan tuition money to students and disburse the loan proceeds to SSH. This knowledge was allegedly based on KeyBank's previous dealings with similar schools. In Plaintiffs' words, "KeyBank single-handedly fueled the meteoric rise of SSH which subsequent lenders gleefully continued."

Unable to take action against SSH because of the automatic stay, 11 U.S.C. § 362, Plaintiffs turned their focus to KeyBank.

## II

## DISTRICT COURT PROCEEDINGS

On June 17, 2008, Plaintiffs filed suit against KeyBank in California state court.[1] After Plaintiffs filed their Second

---

[1] The suit initially included a third plaintiff, Kevin Wilhelmy, and two additional defendants, Student Loan Xpress and American Education Services. Wilhelmy was not listed as a plaintiff in the Third Amended Complaint, and Plaintiffs voluntarily dismissed the two additional defendants.

Amended Complaint, KeyBank removed the case to the U.S. District Court for the Northern District of California under 28 U.S.C. §§ 1441, 1446, and 1453. Plaintiffs asserted claims of unfair competition under California's UCL, which prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Although Plaintiffs' Second Amended Complaint also included claims of aiding and abetting fraud and claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, these claims were omitted from Plaintiffs' Third Amended Complaint — the last complaint filed in this case.

Plaintiffs did not seek damages. Rather, they requested an order enjoining KeyBank from (1) "reporting to any credit agency any default by Plaintiffs or the Class under the Notes," (2) "enforcing the Notes against Plaintiffs and the Class or taking any action in furtherance of enforcement efforts," and (3) "engaging in false and deceptive acts and practices" with respect to consumer credit contracts involving purchase money loans. Plaintiffs sought to prohibit KeyBank from collecting *any* amount of the debt, even though Plaintiffs had received at least some benefit from the loan in the helicopter pilot training they received before SSH shut down.

KeyBank moved to compel arbitration. The district court, Judge Thelton E. Henderson, denied the motion.[2] The initial question the district court had to consider was whether California or Ohio law applied to determine the enforceability of the arbitration clause. Plaintiffs argued that the parties' choice of Ohio law should not control. The district court agreed, holding that Ohio law was "contrary to a fundamental policy of California" and that California had a "materially greater

---

[2]At the time of the district court's decision on the motion to compel arbitration, the operative complaint was the Second Amended Complaint. Later, when the court dismissed Plaintiffs' case, the operative complaint was the Third Amended Complaint. Any differences between the two complaints are not material to our resolution of this appeal.

interest" than Ohio in the resolution of the dispute. *See Hoff-man v. Citibank (S.D.), N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008) (per curiam). This fundamental policy was California's rule prohibiting the arbitration of claims for public injunctive relief, notwithstanding the parties' agreement to arbitrate.[3] *See Cruz*, 66 P.3d at 1164-65. In contrast to California, Ohio law appeared to allow arbitration of such claims. *Hawkins v. O'Brien*, No. 22490, 2009 WL 50616, at *6 (Ohio Ct. App. Jan. 9, 2009). With these considerations in mind, the court declined to apply the parties' choice of Ohio law.

Judge Henderson next considered whether, under California law and the FAA, Plaintiffs could maintain their lawsuit or whether they were bound to arbitrate as required in the Notes. Judge Henderson held that *Broughton* and *Cruz* prohibited the arbitration of Plaintiffs' injunctive relief claims and that therefore, the arbitration clause was unenforceable. Judge Henderson denied the motion to compel arbitration in July of 2009, nearly two years before the Supreme Court issued the *Concepcion* decision and thus did not have the benefit of that opinion.

Pursuant to 9 U.S.C. § 16(a)(1)(C), KeyBank appealed the district court's denial of its motion to compel arbitration. While that interlocutory appeal was pending, KeyBank moved to dismiss the Third Amended Complaint. The district court granted the motion and entered judgment, from which Plaintiffs appeal.

---

[3]Presumably because the district court was considering Plaintiffs' Second Amended Complaint, which requested only private injunctive relief, the district court extended the *Broughton-Cruz* rule to *all* claims for injunctive relief, not merely those for public injunctive relief. Given the Third Amended Complaint's later request for a broad public injunction, we do not address whether such an extension was warranted.

## III

## STANDARD OF REVIEW

We review de novo the district court's decision to deny KeyBank's motion to compel arbitration. *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1152 (9th Cir. 2004). Plaintiffs, as the parties challenging the enforceability of the arbitration clause, "bear[ ] the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

## IV

## DISCUSSION

KeyBank asks us to find error in the district court's refusal to enforce the Note's choice of Ohio law and its application of California law, but we need not address this issue. We assume, without deciding, that California law governs Plaintiffs' claims, because even under California law, the arbitration agreement must be enforced.

## A

### The Federal Arbitration Act

**[1]** The FAA provides for the enforcement of private agreements to arbitrate disputes. It also includes a savings clause that allows such agreements to be invalidated only "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Unless the savings clause applies, arbitration agreements are "valid, irrevocable, and enforceable." *Id.* The United States Supreme Court has repeatedly explained that the FAA was intended to reverse the long history of judicial refusal to enforce arbitration agreements. *See, e.g.*, *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 55 (1995); *Volt Info. Sci., Inc. v. Bd. of Trs.*,

489 U.S. 468, 474 (1989). As the Court stated in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 n.14 (1985), "the Act was designed to overcome an anachronistic judicial hostility to agreements to arbitrate, which American courts had borrowed from English common law."

Causes of action premised on statutory rights are subject to contractual arbitration agreements just as are claims under the common law. *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 725 (9th Cir. 2007) (citing *Mitsubishi Motors Corp.*, 473 U.S. at 627). Congress may, of course, determine that certain claims should not be subject to arbitration and can pass federal legislation that removes such claims from the reach of the FAA. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). But "[a]lthough all statutory claims may not be appropriate for arbitration, '[h]aving made the bargain to arbitrate, the party [opposing arbitration] should be held to it unless *Congress itself has evinced an intention to preclude a waiver of judicial remedies* for the statutory rights at issue.' " *Id.* (emphasis added) (second alteration in original) (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 628). Such congressional intent can be found from the text of the statute or from "an inherent conflict between arbitration and the statute's underlying purposes." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987).

**[2]** The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The federal case must be stayed while the parties proceed to arbitration. 9 U.S.C. § 3. "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, then the Act requires the court to enforce

the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (internal citation omitted). Because the parties here agree that the particular claims at issue fall within the scope of the arbitration clause, we must decide only whether the agreement to arbitrate is valid.

**[3]** The FAA preserves generally-applicable contract defenses and thus allows for invalidation of arbitration agreements in limited circumstances — that is, if the clause would be unenforceable "upon such grounds as exist at law or in equity for the revocation of *any* contract." 9 U.S.C. § 2 (emphasis added). However, any other state law rule that purports to invalidate arbitration agreements is preempted because the Act "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). In short, a state statute or judicial rule that applies only to arbitration agreements, and not to contracts generally, is preempted by the FAA:

> A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner *different from that in which it otherwise construes nonarbitration agreements* under state law. Nor may a court rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable . . . .

*Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) (emphasis added). The federal government's authority to preempt state laws invalidating arbitration agreements derives from the Supremacy Clause of the Constitution. U.S. Const. art. VI ("This Constitution, and the laws of the United States . . . shall be the supreme law of the land; and the judges in every State shall be bound thereby, any thing in the constitution or laws of any State to the contrary notwithstanding.").

## B

## The *Concepcion* Decision

It is against this backdrop that we must read the savings clause found in § 2 of the FAA. Although that section "explicitly retains an external body of law governing revocation (such grounds 'as exist at law or in equity')," *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, ___, 129 S. Ct. 1896, 1902 (2009) (quoting 9 U.S.C. § 2), it also "ensures that [the parties'] agreement will be enforced according to its terms *even if a rule of state law would otherwise exclude such claims from arbitration*," *Mastrobuono*, 514 U.S. at 58 (emphasis added). This inherent tension between the two clauses of § 2 has caused many courts to struggle to define the precise scope of the savings clause.

The Supreme Court recently clarified that scope in *AT&T Mobility LLC v. Concepcion*, ___ U.S. ___, 131 S. Ct. 1740 (2011). *Concepcion* reemphasized that the "saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.* at 1746 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

The plaintiffs in *Concepcion* were telephone service customers to whom AT&T had promised free phones. Although AT&T did not charge its customers for the actual phones, it did charge sales tax based on the retail value of the phones. *Id.* at 1744. When the customers filed suit in federal court, AT&T moved to compel arbitration pursuant to the arbitration agreement in the customers' service contracts. The arbitration clause required all customers to arbitrate disputes in an "individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding." *Id.*

The district court concluded in *Concepcion* that the arbitration clause was unconscionable, relying on the California Supreme Court's opinion in *Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005). The *Discover Bank* rule prohibited as unconscionable the enforcement of class action waivers in arbitration agreements,

> when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money.

*Id.* at 1110. On appeal, we affirmed the district court's application of the *Discover Bank* rule to find the arbitration clause unenforceable. We held that the *Discover Bank* rule was not preempted by the FAA because it was "simply a refinement of the unconscionability analysis applicable to contracts generally in California," rather than a rule that applied only to arbitration agreements. *Laster v. AT&T Mobility LLC*, 584 F.3d 849, 857 (9th Cir. 2009) (internal quotation marks omitted), *rev'd sub nom.*, *Concepcion*, 131 S. Ct. 1740.

**[4]** The Supreme Court disagreed. The Court identified the two situations in which a state law rule will be preempted by the FAA. First, "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Concepcion*, 131 S. Ct. at 1747. A second, and more complex, situation occurs "when a doctrine normally thought to be generally applicable, such as duress or, as relevant here, unconscionability, is alleged to have been applied in a fashion that disfavors arbitration." *Id.* In that case, a court must determine whether the state law rule "stand[s] as an obstacle to the accomplishment of the FAA's objectives," which are principally to "ensure that private arbitration agreements are

enforced according to their terms." *Id.* at 1748. If the state law rule is such an obstacle, it is preempted.

The Court held that the *Discover Bank* rule — prohibiting class action waivers in arbitration agreements — was just such a rule because "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Id.* at 1748. Just as the FAA guarantees that contracting parties "may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit *with whom* a party will arbitrate," *id.* at 1748-49 (internal citations omitted), so too does it allow them to agree to limit *in what capacity* they arbitrate, *id.* at 1750-51. In so holding, the Court rejected the plaintiffs' argument that the savings clause applied to the *Discover Bank* rule because of the rule's "origins in California's unconscionability doctrine and California's policy against exculpation." *Id.* at 1746. Neither was the Court persuaded by the dissent's policy argument that requiring the availability of class proceedings allows for vindication of small-dollar claims that otherwise might not be prosecuted, concluding that "States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." *Id.* at 1753. Even though California might have had a legitimate basis for its public policy against class action waivers, that policy could not save the *Discover Bank* rule from FAA preemption.

## C

### California's *Broughton-Cruz* Rule

As the Supreme Court did with the Discover Bank rule in *Concepcion*, we examine the state law rule at issue here to determine whether it is preempted by the FAA. In *Broughton*, the California Supreme Court considered whether plaintiffs asserting claims under that state's Consumers Legal Remedies Act ("CLRA") could be compelled to arbitrate those claims.

Plaintiffs requested remedies including an order enjoining the defendant from engaging in deceptive advertising. *Broughton*, 988 P.2d at 71. The court concluded that an agreement to arbitrate could not be enforced in a case where the plaintiff is "functioning as a private attorney general, enjoining future deceptive practices on behalf of the general public." *Id.* at 76. This decision was based on the court's determination that the California legislature "did not intend this type of injunctive relief to be arbitrated." *Id.*

According to the California Supreme Court, "the evident institutional shortcomings of private arbitration in the field of such public injunctions" would be unacceptable in a case where there was more "at stake" than a "private dispute by parties who voluntarily embarked on arbitration aware of the trade-offs to be made." *Id.* at 77. The court noted that enforcement of an arbitrator's injunction would require a new arbitration proceeding, but that a court retains jurisdiction and could more easily handle the "considerable complexity" involved in supervising injunctions. *Id.* Further, judges "are accountable to the public in ways arbitrators are not." *Id.* The court thus found that the judicial forum "has significant institutional advantages over arbitration in administering a public injunctive remedy, which as a consequence will likely lead to the diminution or frustration of the public benefit if the remedy is entrusted to arbitrators." *Id.* at 78.

The *Broughton* court held also that prohibiting the arbitration of CLRA claims for injunctive relief did not contravene the FAA: "although the [U.S. Supreme Court] has stated generally that the capacity to withdraw statutory rights from the scope of arbitration agreements is the prerogative solely of Congress, not state courts or legislatures, it has never directly decided whether a [state] legislature may restrict a private arbitration agreement when it inherently conflicts with a public statutory purpose that transcends private interests." *Id.* (internal citation omitted).

In *Cruz*, the California Supreme Court extended the *Broughton* rule to claims for public injunctive relief under the UCL. 66 P.3d at 1159. The court found that "the request for injunctive relief is clearly for the benefit of health care consumers and the general public by seeking to enjoin Pacifi-Care's alleged deceptive advertising practices." *Id.* at 1164. Because public injunctive relief claims under the UCL are "designed to prevent further harm to the public at large rather than to redress or prevent injury to a plaintiff," the court held that such claims could not be subject to arbitration, notwithstanding the parties' agreement to the contrary. *Id.* at 1165.

We have previously agreed with the California Supreme Court that the *Broughton-Cruz* rule prohibits arbitration for claims for public injunctive relief. *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1082 (9th Cir. 2007) ("California law provides that certain 'public injunctions' are incompatible with arbitration . . . . Actions seeking such injunctions cannot be subject to arbitration even under a valid arbitration clause."). We must, however, reexamine whether *Davis* remains good law after *Concepcion*. *United States v. Rodriguez-Lara*, 421 F.3d 932, 943 (9th Cir. 2005) (a prior panel decision is binding unless "intervening Supreme Court or en banc authority" compels a contrary conclusion).

## D

### *Concepcion*'s Effect on the *Broughton-Cruz* Rule

We now turn to whether California's rule against arbitration of public injunctive claims is preempted by federal law. The district courts in California have been working diligently to discern precisely whether the *Broughton-Cruz* rule has survived *Concepcion*. They have come to different conclusions.

Shortly after *Concepcion* was decided, Judge Alsup of the Northern District of California determined that the California state law rule against arbitration of public injunctive relief

claims did not survive the Supreme Court's decision and was preempted by the FAA. *Arellano v. T-Mobile USA, Inc.*, No. 3:10-cv-05663-WHA, Dkt. 82, 2011 WL 1842712, at *2 (N.D. Cal. May 16, 2011). The district court noted the Supreme Court's decades-old statement that " 'Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements.' " *Id.* at *1 (quoting *Southland Corp.*, 465 U.S. at 16). *Arrellano* concluded that because "California's preclusion of public injunctive relief claims from arbitration . . . 'prohibits outright the arbitration of a particular type of claim,' " the rule is preempted by the FAA. *Id.* at *1-2 (quoting *Concepcion*, 131 S. Ct. at 1747). Judge Alsup acknowledged the policy argument that enforcement of an arbitration clause in a public injunctive relief case "would preclude an individual from ever bringing these types of claims by foisting prohibitive costs on the individual plaintiff," but determined that, "[p]erhaps regrettably, this argument was rejected by *Concepcion*." *Id.* at *2.

Other cases from the Northern District have similarly held that *Concepcion* compels the conclusion that the FAA preempts the *Broughton-Cruz* rule. Judge Whyte agreed with *Arellano*'s reliance on *Concepcion*'s "particular type of claim" analysis and concluded that "*Concepcion* would seem to preempt California's arbitration exemption for claims requesting public injunctive relief." *In re Apple and AT&T iPad Unlimited Data Plan Litig.*, No. 5:10-cv-02553-RMW, Dkt. 107, 2011 WL 2886407, at *4 (N.D. Cal. July 19, 2011).

After *Concepcion*, Judge Henderson — the district judge in this case — also interpreted that case as foreclosing the application of the *Broughton-Cruz* rule. *Nelson v. AT&T Mobility LLC*, No. 3:10-cv-04802-THE, Dkt. 30, 2011 WL 3651153, at *2 (N.D. Cal. Aug. 18, 2011). Describing the rule against arbitration of public injunctive relief claims as a "blanket ban[ ]" of arbitration under state law, Judge Henderson held that *Concepcion* compels preemption of that rule, notwith-

standing "public policy arguments thought to be persuasive in California." *Id.* (internal quotation marks omitted).

Other district courts have disagreed and determined that the *Broughton-Cruz* rule is still viable after *Concepcion*. Judge Guilford of the Central District stated that "[t]he holdings of *Cruz* and *Broughton* are not inconsistent with *Concepcion*, and they protect important public rights and remedies." *In re DirecTV Early Cancellation Fee Marketing and Sales Practices Litig.*, ___ F. Supp. 2d ___, No. 8:09-ml-02093-AG-AN, Dkt. 255, 2011 WL 4090774, at *10 (C.D. Cal. Sept. 6, 2011) (*In re DirecTV Litigation*). He reasoned that the public injunction rule was not an "outright" prohibition of arbitration of a particular type of claim because it did not prohibit arbitration of all injunctive relief claims, but only those "brought on behalf of the general public." *Id.* The court, relying on *Broughton*'s claimed institutional advantages of the judicial over the arbitral forum, found "compelling reasons why arbitration is not the proper forum for vindicating a broad public right." *Id.* (citing *Broughton*, 988 P.2d at 77-78)

Judge Carter of the Central District recently considered *Concepcion* and the *Broughton-Cruz* rule in a case with allegations quite similar to those before us, albeit against the school, not the lender. *Ferguson v. Corinthian Colleges*, ___ F. Supp. 2d ___, No. 08:11-cv-00127-DOC-AJW, Dkt. 56, 2011 WL 4852339 (C.D. Cal. Oct. 6, 2011). There, a former student of one of the defendant colleges alleged that the school induced students to enroll by making them "believ[e] they are receiving a quality education at an affordable price, when, in fact, they pay some of the highest tuition rates in the country, incur crippling student loans, and graduate with a degree that never qualifies nor prepares them for any job placement other than low-wage, low-skill employment." *Id.* at *1. The student claimed, *inter alia*, that these actions violated the UCL.

*Ferguson* held that "the California Legislature's decision to allow citizens to bring injunctive relief claims . . . *on behalf*

*of the public*" was not preempted by the FAA. *Id.* at *7. The court noted that "[n]otwithstanding *Concepcion*'s mandate that state law cannot prohibit arbitration of certain types of claims, the Supreme Court previously acknowledged that 'not . . . all controversies implicating statutory rights are suitable for arbitration.' " *Id.* (quoting *Mitsubishi Motors*, 473 U.S. at 627) (omission in original). The court agreed with the principle announced in *Broughton* that a state legislature *can* enact laws the purposes of which are incompatible with the enforcement of an arbitration agreement. Claims under such laws avoid FAA preemption, Judge Carter reasoned, as long as "the primary purpose of an injunctive relief action under the [statute] is to protect the public." *Id.* at *9. Judge Carter held that "[b]ecause Plaintiffs' injunctive relief claims seek to enforce a public right, there is an inherent conflict with sending these claims to an arbitrator." *Id.*

**[5]** We hold that the *Broughton-Cruz* rule does not survive *Concepcion* because the rule "prohibits outright the arbitration of a particular type of claim" — claims for broad public injunctive relief. *Concepcion*, 131 S. Ct. at 1747. Therefore, our statement in *Davis* — that *Broughton* and *Cruz* prohibit the arbitration of public injunctive relief claims in California — is no longer good law. *See* 485 F.3d at 1082.

We are not blind to the concerns engendered by our holding today. It may be that enforcing arbitration agreements even when the plaintiff is requesting public injunctive relief will reduce the effectiveness of state laws like the UCL. It may be that FAA preemption in this case will run contrary to a state's decision that arbitration is not as conducive to broad injunctive relief claims as the judicial forum. And it may be that state legislatures will find their purposes frustrated. These concerns, however, cannot justify departing from the appropriate preemption analysis as set forth by the Supreme Court in *Concepcion*.

The difficulty with the preemption analysis urged by Plaintiffs and applied in *Ferguson* and *In re DirecTV Litigation* is

twofold. First, it improperly gives weight to state public policy rationales to contravene the parties' choice to arbitrate. *Concepcion* rejected this proposition, holding that state law "cannot require a procedure that is inconsistent with the FAA, *even if it is desirable for unrelated reasons*." 131 S. Ct. at 1753 (emphasis added); *see also id.* at 1753 (Thomas, J., concurring) ("If § 2 means anything, it is that courts cannot refuse to enforce arbitration agreements because of a state public policy against arbitration."). Although Plaintiffs are correct that "*Concepcion* did not address the question of arbitrability of a public injunction remedy," the policy arguments justifying the *Broughton-Cruz* rule, however worthy they may be, can no longer invalidate an otherwise enforceable arbitration agreement.

Indeed, the Supreme Court recently relied on *Concepcion* to reaffirm the FAA's preemption of state public policy justifications. *In Marmet Health Care Center, Inc. v. Brown*, Nos. 11-391 and 11-394, 565 U.S. ___ (Feb. 21, 2012) (per curiam), the Court held that under the FAA, an arbitration agreement between a nursing home and a patient's family member was enforceable in a suit against the nursing home for personal injury or wrongful death — despite the West Virginia Supreme Court of Appeals' conclusion that arbitration of such claims was against that state's public policy. Slip Op. at 3-4. Because the public policy of West Virginia prohibited " 'outright the arbitration of a particular type of claim" — personal injury and wrongful death claims — that policy was "displaced by the FAA.' " *Id.* at 3 (quoting *Concepcion*, 131 S. Ct. at 1747).

The second problem with Plaintiffs' argument is that it mistakenly regards the motivation of state legislators as relevant to determining whether federal law preempts their legislation. "In enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and *withdrew the power of the states to require a judicial forum* for the resolution of claims which the contracting parties agreed to resolve by arbi-

tration." *Southland Corp.*, 465 U.S. at 10 (emphasis added). In *Southland Corp.*, the Court identified "only two limitations" on the FAA's enforcement provision: arbitration provisions (1) "must be a part of a written maritime contract or a contract 'evidencing a transaction involving commerce' " and (2) can be invalidated under the savings clause. *Id.* at 10-11 (quoting 9 U.S.C. § 2). No other "additional limitations under State law" can render arbitration clauses unenforceable. *Id.* at 11.

The *Ferguson* court was correct that there is a third exception to the FAA's applicability, but it applies only to *federal* statutory claims. In *Mitsubishi Motors Corp.*, the Court approved a two-step inquiry in determining whether a statutory claim was subject to arbitration. This approach "first determin[es] whether the parties' agreement to arbitrate reached the statutory issues, and then . . . consider[s] whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." 473 U.S. at 628. But such external constraints may be found only in other federal statutes, not in state law or policy. *See id.* ("We must assume that if *Congress* intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history.") (emphasis added).

*Broughton*, upon which *Ferguson* and *In re DirecTV Litigation* relied, found an inherent conflict between arbitration and public injunctive relief claims under California law. 988 P.2d at 78-79. The *Broughton* court then explained why its rule prohibiting the arbitration of claims for public injunctive relief was consistent with the FAA: "Although both California and federal law recognize the important policy of enforcing arbitration agreements, it would be perverse to extend the policy so far as to preclude states from passing legislation the purposes of which make it incompatible with arbitration." *Id.* at 79.

But the very nature of federal preemption *requires* that state law bend to conflicting federal law — no matter the purpose of the state law. It is not possible for a state legislature to avoid preemption simply because it intends to do so. The analysis of whether a particular statute precludes waiver of the right to a judicial forum — and thus whether that statutory claim falls outside the FAA's reach — applies only to *federal*, not state, statutes. On the several occasions that the Supreme Court has considered whether a statutory claim was unsuitable for arbitration, the claim at issue was a federal one. *See Gilmer*, 500 U.S. at 35 (Age Discrimination in Employment Act); *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 479-484 (1989) (Securities Act of 1933, overruling *Wilko v. Swan*, 346 U.S. 427 (1953)); *McMahon*, 482 U.S. at 238, 242 (Securities Exchange Act of 1934 and RICO); *Mitsubishi Motors Corp.*, 473 U.S. at 629 (Sherman Act). Although some members of the Court have expressed a desire to interpret § 2 as allowing states to preclude arbitration on public policy grounds, that view has not carried the day. *See Perry*, 482 U.S. at 495 (O'Connor, J., dissenting) ("[T]here can be little doubt that the California Legislature intended to preclude waiver of a judicial forum . . . . California's policy choice to preclude waivers of a judicial forum for wage claims is entitled to respect."); *Southland*, 465 U.S. at 21 (Stevens, J., concurring in part and dissenting in part) ("We should not refuse to exercise independent judgment concerning the conditions under which an arbitration agreement, generally enforceable under the Act, can be held invalid as contrary to public policy simply because the source of the substantive law to which the arbitration agreement attaches is a State rather than the Federal Government.").

We read the Supreme Court's decisions on FAA preemption to mean that, other than the savings clause, the only way a particular statutory claim can be held inarbitrable is if *Congress* intended to keep that *federal* claim out of arbitration proceedings:

> That is not to say that all controversies implicating statutory rights are suitable for arbitration. There is no reason to distort the process of contract interpretation, however, in order to ferret out the inappropriate. Just as it is the *congressional* policy manifested in the Federal Arbitration Act that requires courts liberally to construe the scope of arbitration agreements covered by that Act, it is the *congressional* intention expressed in some other statute on which the courts must rely to identify any category of claims as to which agreements to arbitrate will be held unenforceable.

*Mitsubishi Motors Corp.*, 473 U.S. at 627 (emphasis added). *See also Dean Witter Reynolds, Inc.*, 470 U.S. at 221 ("The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, . . . at least absent a countervailing policy manifested in *another federal statute*.") (emphasis added).

[6] In the end, we circle back to the Supremacy Clause. The FAA is "the supreme law of the land," U.S. Const. art. VI, and that law renders arbitration agreements enforceable so long as the savings clause is not implicated. The *Broughton-Cruz* rule "prohibits outright the arbitration of a particular type of claim" — claims for public injunctive relief. *Concepcion*, 131 S. Ct. at 1747. This prohibition cannot be described as a "ground[ ] as exist[s] at law or in equity for the revocation of any contract," 9 U.S.C. § 2, because it "appl[ies] only to arbitration [and] derive[s] its meaning from the fact that an agreement to arbitrate is at issue," *Concepcion*, 131 S. Ct. at 1746. Although the *Broughton-Cruz* rule may be based upon the sound public policy judgment of the California legislature, we are not free to ignore *Concepcion*'s holding that state public policy cannot trump the FAA when that policy prohibits the arbitration of a "particular type of claim." Therefore, we hold that "the analysis is simple: The conflicting [*Broughton-*

*Cruz*] rule is displaced by the FAA." *Concepcion*, 131 S. Ct. at 1747. *Concepcion* allows for no other conclusion.

**E**

**Unconscionability**

The district court, having determined that Plaintiffs' claims were not arbitrable under *Broughton* and *Cruz*, did not decide whether the Note's arbitration clause is unconscionable. Given our conclusion that the *Broughton-Cruz* rule is no longer viable post-*Concepcion*, we accept the parties' invitation to consider this issue.

**[7]** *Concepcion* did not overthrow the common law contract defense of unconscionability whenever an arbitration clause is involved. Rather, the Court reaffirmed that the savings clause preserves generally applicable contract defenses such as unconscionability, so long as those doctrines are not "applied in a fashion that disfavors arbitration." *Concepcion*, 131 S. Ct. at 1747.

Unconscionability under California law "has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000) (internal quotation marks omitted). Courts use a "sliding scale" in analyzing these two elements: "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* No matter how heavily one side of the scale tips, however, *both* procedural and substantive unconscionability are required for a court to hold an arbitration agreement unenforceable. *Id.*

**[8]** In *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199-1200 (9th Cir. 2002), we applied California law and

determined that an arbitration agreement was not procedurally unconscionable, in large part because it contained an opt-out provision allowing the plaintiff to reject the arbitration program within 30 days of signing the contract. The provision constituted a "meaningful" opportunity to opt out, notwithstanding the plaintiff's arguments that "he did not have the degree of sophistication necessary to recognize the meaning of the opt-out provision or to know how to avoid it." *Id.* at 1200. We invoked "the general rule . . . that 'one who signs a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument.' " *Id.* (quoting *Madden v. Kaiser Found. Hosps.*, 552 P.2d 1175, 1185 (Cal. 1976). We further held that 30 days was an "ample opportunity to investigate any provisions [the plaintiff] did not understand before deciding whether to opt out of [the] arbitration program." *Id.*

**[9]** Here, the arbitration clause in the Note, like that at issue in *Circuit City*, withstands scrutiny. The arbitration agreement is not buried within the document; it is conspicuous and appears in its own section of the Note. The Note contains more than one statement setting forth in plain language the rights that Plaintiffs would waive if they did not opt-out of the arbitration clause: the right to litigate in court, the right to a jury trial, and the right to proceed on a class basis. The arbitration clause even points out that the costs of arbitration could be higher than those of a trial.

Plaintiffs attempt to dismiss these obvious statements by asserting that KeyBank never communicated the existence of the clause to them other than in the Note; further, all of the face-to-face interaction the students had regarding the Note was with SSH, not with KeyBank. Plaintiffs claim also that they had "no guidance on what to do in the event" they had any questions about the Note and that it is therefore "[n]ot surprising[ ] [that] not a single SSH borrower exercised his/her opt-out right."

We do not see how these allegations are relevant given the clarity of the contract that Plaintiffs signed. The Note states that the opt-out notice must be in writing and that telephone calls do not suffice. It lists precisely what information must be included in the notice and the address to which the notice must be sent. Far from accepting Plaintiffs' suggestion at oral argument that these requirements were intolerably onerous, we view them as clear, easy-to-follow instructions as to how Plaintiffs could have opted out of the arbitration agreement had they chosen to do so. To the extent Plaintiffs claim that they were so "intoxicated by helicopters" that they never saw the arbitration clause, we refer them to the end of the Note. Immediately above each Plaintiff's signature line is a warning that the student should read the contract carefully before signing, as well as a promise from the student that he would do so "even if otherwise advised."

**[10]** The arbitration agreement was not forced upon the Plaintiffs leaving them with no meaningful choice. We will not relieve Plaintiffs of their contractual obligation to arbitrate by manufacturing unconscionability where there is none. Because we hold that the arbitration clause in the parties' contract is not procedurally unconscionable, we need not address whether the terms of that clause are substantively unconscionable. It is enough that when faced with a 60-day opt-out provision and a conspicuous and comprehensive explanation of the arbitration agreement, Plaintiffs did not reject that agreement.

## F

## KeyBank's Motion to Dismiss

At oral argument, both counsel urged us to reach the issues raised in Appeal No. 10-15934 even if we were to conclude that the case must proceed to arbitration. It would be inappropriate for us to do so. Because the motion to compel arbitration should have been granted, the subsequent judgment in

favor of KeyBank is a nullity. For this reason, and given our decision to vacate the judgment, Appeal No. 10-15934 is moot. We express no opinion on the central issue in that appeal — whether Plaintiffs' UCL claims would be preempted by the NBA or the OCC regulations.

# V

## CONCLUSION

[11] The FAA preempts California's *Broughton-Cruz* rule that claims for public injunctive relief cannot be arbitrated. Plaintiffs must be held to their decision to sign the Note — and accept at least a portion of the benefit of their contract with KeyBank — without opting out of the arbitration agreement.

For the foregoing reasons, in Interlocutory Appeal No. 09-16703, we REVERSE the district court's denial of KeyBank's motion to compel arbitration, VACATE the judgment, and REMAND to the district court with instructions to enter an order staying the case and compelling arbitration.

We DISMISS Appeal No. 10-15934 as MOOT.